**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARK ROGOZINSKI | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  11-2594 |
| NCO FINANCIAL SYSTEMS, INC., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

BUCKWALTER, S.J.                                                    October 24, 2012

  Currently pending before the Court are the Cross-Motions for Summary Judgment of

Plaintiff Mark Rogozinski and Defendant NCO Financial Systems, Inc.  For the following

reasons, Plaintiff's Motion is denied and Defendant's Motion is granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

  This matter centers on the attempted collection of a debt by Defendant NCO Financial

Systems, Inc. ("NCO") from Plaintiff Mark Rogozinski.  Plaintiff claims that Defendant's actions

in attempting to collect on this debt violated the Fair Debt Collection Practices Act ("FDCPA"),

15 U.S.C. § 1692 et seq.  Two specific events give rise to the issues.  First, on October 12, 2009,

NCO attempted to send Plaintiff an initial letter notice as required by FDCPA § 1692(g).  (Pl.'s

Brief in Opp'n Summ. J, Ex. F., Second Deposition of Michael Noah ("Noah Dep. II")

5:25–5:14, April 12, 2012.)  The notice was to inform Plaintiff about a previous debt on a

Discover credit card account.  (Pl.'s Mot. Summ. J., Ex. A., October 7, 2010 Transcript of Phone

Call ("10/7/2010 Call Tr.") 4.)  The notice was sent to the address of Plaintiff's mother, where

Plaintiff had not resided for six years.  (Noah Dep. II 5:10–18; Pl.'s Mot. Summ. J., Ex. D.,

Deposition of Mark Rogozinski ("Rogozinski Dep.") 4:17–22, Apr. 12, 2012.)  Plaintiff states

that he never received this notice.  (Rogozinski Dep. 68:22–69:11.)

     Second, Mr. Rogozinski called NCO on June 7, 2010 after receiving a voice mail from

them earlier that day.  (Def.'s Mot. Summ. J., Ex. B, First Deposition of Michael Noah ("Noah

Dep. I") 136:11–12, Dec. 13, 2011.)  The call was answered by Tejas Bhandare, an NCO

employee located in Mumbai, India.  (10/7/2010 Call Tr. 1.)   The following exchange then took

place:

| | |
|---|---|
| Bhandare: | "How can I help you, sir?" |
| Rogozinski: | "Ok, uhm...I wanna know who you guys are and why you're calling our house trying to collect a debt." |
| Bhandare: | "What number did you receive a call on sir?" |
| Rogozinski: | "Uh, you called my home number twice today. [Number redacted.]" |
| Bhandare: | "No, we didn't call you today." |
| Rogozinski: | "Uh, it's on my caller ID, dude.  I'm looking at it right now. Second time you called was 1:27 PM." |
| Bhandare: | "Must be some sort of a mistake, sir." |
| Rogozinski: | "Excuse me?" |
| Bhandare: | "Must be some sort of mistake." |

(10/7/2010 Call Tr. 1.)  Plaintiff then played back the voice mail recording of the phone call

earlier that day from NCO, after which Mr. Bhandare admitted that NCO was "looking for Mark

Rogozinski."  (Id. at 2.)  After another brief exchange, Mr. Bhandare transferred the call to Mr.

Oliver Lingam, who had been identified in the original message left on Mr. Rogozinski's voice

mail.  (Id. at 2–3.)  Mr. Lingam informed Mr. Rogozinski that he was calling in regards to an

overdue balance on Mr. Rogozinski's Discover card from 1997.  (Id. at 4.)  Mr. Rogozinski told

Mr. Lingare that the statute of limitations on this debt had run out a long time ago, told Mr.

Lingare that NCO should not call him again, that he had the conversation recorded, and that

NCO would be hearing from him later.  (Id. at 4–5.)

Mr. Rogozinski filed suit on April 15, 2011 bringing one count for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692.  He alleged specifically that Defendants (1) violated 1692(d) by harassing Plaintiff in connection with the collection of an alleged debt, (2) violated 1692(e) by using false, deceptive, or misleading representations or means in connection with the collection of an alleged debt, (3) specifically violated 1692(e)(10) by using false misrepresentations or deceptive means to collect or attempt to collect a debt, (4) violated 1692(f) by using unfair and unconscionable means to collect or attempt to collect a debt, (5) violated 1692(g) by failing to send written notification within five days of its initial communication with Plaintiff advising him on his rights to dispute the debt or request verification of the debt, and (6) generally violated the FDCPA.  On September 19, 2012, Defendant NCO filed a Motion for Summary Judgment, and on October 3, Plaintiff filed its Response in Opposition.  On September 28, Plaintiff filed its own Motion for Summary Judgment, and on October 12, Defendant filed its Response in Opposition.  The Court now considers the merits of these Motions.

## II.    STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

On summary judgment, the moving party has the initial burden of identifying evidence

that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."  Id. at 325.  Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec., 475 U.S. at 586.  "[T]he non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex,

4

477 U.S. at 322.  Moreover, the mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue.  Anderson, 477 U.S. at 249–50.

## III.   DISCUSSION

The facts are mainly undisputed in this case.  Both Plaintiff and Defendant believe they are entitled to Summary Judgment on the FDCPA claims for (1) failing to send written notification as required by 1692(g) and (2) making false statements in connection with collection of a debt.  Additionally, both Plaintiff and Defendant believe they are entitled to summary judgment on the question of whether Defendant's behavior was harassing and unconscionable.

### A.   Whether NCO Violated the FDCPA By Sending Written Notification to the Wrong Address

Section 1692g of the FDCPA provides:

(a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–

   (1) the amount of the debt;

   (2) the name of the creditor to whom the debt is owed;

   (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

   (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such

verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g.  Under federal common law,[1] "the 'mailbox rule' . . . 'provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time.'"  Hoefs v. CACV of Colo., LLC, 365 F. Supp. 2d 69, 72-73 (D. Mass. 2005) (quoting Schikore v. BankAmerica Supplemental Ret. Plan, 269 F.3d 956, 961 (9th Cir. 2001)).  "Defendants need not prove actual receipt of the [mailed document]; rather, proof of receipt 'may be accomplished by presenting circumstantial evidence, including evidence of customary mailing practices used in the sender's business.'"  Robertson v. J.C. Penney Co., Inc., 484 F. Supp. 2d 561, 565 (S.D. Miss. 2007) (quoting Marsh v. First USA Bank, N.A., 103 F. Supp. 2d 909, 918 (N.D. Tex. 2000)).  Furthermore, "the affiant in support of the mailing need not have personal knowledge of the letter's mailing, but 'at a minimum the affiant must have personal knowledge of the procedures in place at the time of mailing.'"  Id.

Plaintiff does not dispute that NCO sent notification to Plaintiff's mother's address, at which Plaintiff had previously lived (though not for six years prior to the litigation).  Defendant argues that it has complied with 1692g because it sent the letter and did not receive any notification suggesting the letter was not received.  As such, Defendant states that it complied with the mailbox rule by sending the letter and, thus, has not violated 1692g.

---

[1]  Because Plaintiff's claims arise under federal law and involve no issues of state law, the question of whether Defendant has created a presumption that it mailed a letter on October 1, 2009 is governed by federal common law.

Plaintiff argues that, because NCO sent the letter to an address at which he no longer resided, it did not comply with 1692g.  In support, Plaintiff cites Palisades Collection, LLC v. O'Brien, 873 N.E. 2d 923, 928 (Ohio Ct. App., 2007), which states: "'Thus, while the plain language of the statute does not require the debt collector to ensure actual receipt of the validation notice, the plain language does require the debt collector to send the validation notice to a *valid* and *proper* address where the consumer may actually receive it.'" (citing  Johnson v. Midland Credit Mgmt Inc., No. Civ.A.05-1094, 2006 WL 2473004, at *12 (N.D. Ohio Aug. 24, 2006) (emphasis added in Palisades).  Plaintiff contends that NCO did not send the letter to a "proper and valid address," since it was sent to one at which he no longer resided.  Plaintiff then cites a number of cases in which courts found the mailbox rule to be inapplicable when the letter was sent to an incorrect address.  The cases Plaintiff cites, however, all stand for the notion that a Defendant has not complied with 1692g when it either had the letter returned as undeliverable or *knowingly* has sent the letter to a wrong address.  In Palisades, in reaching its conclusion that proper notice was not sent, the court noted that the validation letter was returned to the Defendant as being undeliverable.  Palisades, 873 N.E. 2d at 928.  In Peterson v. Portfolio Recovery Assocs., LLC, No. Civ.A.09-2707, 2010 WL 2015260, at *3 (D.N.J. May 19, 2010) (rev'd on other grounds), another case cited by Plaintiff, the court found that "In order to create a genuine issue of material fact on this point, Defendant would need to come forth with evidence suggesting that *there is a reason to suppose that Plaintiff would receive mail sent to the. . .address.*"  (emphasis added).

Unlike the cases cited above, there is evidence in this case suggesting that Defendant *did* have reason to believe the letter was sent to an address where it would reach Plaintiff.  According

to testimony by Michael Noah, NCO's Senior Vice President, NCO found Mr. Rogozinski's address using a Lexis-Nexis credit search.  (Noah Dep I. 109:20–110:1.)  Additionally, as a general policy, before a notice letter is sent out to an address, NCO's letter vendor, a company named PSC, performs a "scrub" of the address information by running it through a Lexis-Nexis database and the National Change of Address database to confirm that the letter is being sent to a proper and valid address.  (Id. at 115:10–116:2.)  When there is a problem with a letter and it is not sent out, PSC sends NCO notice and there is an indication made on PSC's records.  (Id. at 117:18–118:14.)  No such indication was made in this case.  (Id.)  Mr. Noah's testimony is sufficient for Defendants to meet the burden of invoking the mailbox rule and raise a rebuttable presumption that the required notification was sent.

In its opposition to Defendant's Motion, Plaintiff compares the facts of this case to this Court's ruling in Kimmel v. Calvary Portfolio Servs., LLC, No. Civ.A.10-680, 2011 WL 3204841, at *4–5 (E.D. Pa. Jul. 28, 2011), in which we denied the defendant's Motion for Summary Judgment because there was insufficient evidence to create a presumption that a letter was mailed.  In Kimmel, the only evidence was (1) a copy of the letter allegedly sent out and (2) an affidavit from the Vice President of the company that defendant used to print out and mail its collection letters stating that "a letter" was sent to defendant.  Id.  In denying summary judgment, the Court noted that the Vice President did not appear to have personal knowledge of the mailing procedures in place at the time.  Id.  Plaintiff claims that the facts are similar here, and Mr. Noah's testimony as to the procedures used by NCO and PSC is insufficient to raise the presumption of the mailbox rule.

Though Kimmel is seemingly similar to the case at hand, NCO has provided evidence

8

here to satisfy the mailbox rule and raise a rebuttable presumption that the required notification was sent.  As noted above, and unlike the defendant in <u>Kimmel</u>, Mr. Noah testified that, before the letter was sent out, address checks were run through both Lexis-Nexis and the National Change of Address database.  Mr. Noah also testified that, pursuant to their normal mailing procedures, if there is any problem with the address, PSC's normal procedure is to notify NCO without sending the letter.  Noah stated that no notification was received.  Simply put, NCO did more than the defendant in <u>Kimmel</u> by indicating his personal knowledge of the procedures in place at the time of mailing.  Because Plaintiff cannot rebut the presumption that the letter was sent, Defendant has satisfied its burden and is entitled to summary judgment on this claim.

**B.      Whether NCO Violated the FDCPA By Making False, Deceptive, or Misleading Statements in Connection with the Collection of a Debt**

Section 1692e of the FDCPA provides that "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  In analyzing a claim under the FDCPA and whether or not a statement has the ability to mislead or deceive a debtor, the Third Circuit has adopted the "least sophisticated debtor" standard.  <u>Rosenau v. Unifund Corp.</u>, 539 F.3d 218, 221 (3d Cir. 2008).  "'[A] communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor.'"  <u>Id.</u> (citing <u>Brown v. Card Serv. Ctr.</u>, 464 F.3d 450, 454 (3d. Cir. 2006)).   The least sophisticated debtor standard is used to effectuate "the basic purpose of the FDCPA: . . . to protect 'all consumers, the gullible as well as the shrewd' . . . ."  <u>Id.</u> (quoting <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318 (2d Cir. 1993)).

Though the Third Circuit Court of Appeals has yet to rule on the matter, at least three

9

other Circuit Courts have found that, in order to be actionable under 1692e, a false or misleading statement must have been material.  In Hahn v. Triumph P'ships, LLC, 557 F.3d 755, 757–58 (7th Cir. 2009) (Easterbrook, C.J.), the court stated that it did "not see any reason why materiality should not . . . be required in an action based on § 1692e."  The court further noted that the statute "is designed to provide information that helps consumers to choose intelligently, and by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)."  Id. at 758.  An immaterial statement which is false in some technical sense will not mislead the unsophisticated consumer and does not violate the FDCPA.  Wahl v. Midland Credit Mgmt., 556 F.3d 643, 645–46 (7th Cir. 2009).  The Seventh Circuit's reasoning has since been adopted by the Sixth Circuit and the Ninth Circuit. See Miller v. Javitch, Block & Rathbone, 561 F.3d 588, 596 (6th Cir. 2009); Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1033–34 (9th Cir. 2010); see also Lorandeau v. Capital Collection Serv., No. Civ.A.10-3807, 2011 WL 4018248, at *8 (E.D. Pa. Sept. 8, 2011) ("The approach of the Sixth, Seventh, and Ninth Circuits to technical falsity is persuasive.")

The statements at issue in this case are (a) the one time Mr. Bhandare told Mr. Rogozinski that NCO had not called him earlier that day and (b) the two times he told Mr. Rogozinski that he was mistaken about NCO calling.  While these statements may have been false in the technical sense, they are by no stretch of the imagination, material.  As Defendants point out, Mr. Rogozinski was in no way deceived or misled, as he knew that NCO had called him earlier that day.  In fact, the earlier call was the very reason why Mr. Rogozinski placed the return call.  The least sophisticated consumer is not one absent all intelligence; even he can recognize, in the face of statements to the contrary, that a credit company called him when he has

a voicemail indicating such.  Thus, because Plaintiff has not shown that any statements were materially misleading or deceptive, summary judgment will be granted to Defendant on this claim.

        **C.**    **Whether NCO Violated the FDCPA By Harassing Plaintiff or Using Unconscionable Means in Connection with Collection of a Debt**

Under Section 1692d of the FDCPA, "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  The statute then lists a number of examples of what is considered harassing conduct under the provision, including, *inter alia*, the use of violence to harm a person or his property, the use of obscene or profane language, or repeated attempts to phone a person with an intent to annoy, abuse, or harass.  In a similar provision, under Section 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. 1692f.  As with 1692d, the code then lists a number of specific examples of unconscionable conduct, including the solicitation of postdated checks and taking or threatening to take property where there is no legal right to do so.

Plaintiff contends that the totality of NCO's conduct—including the two calls on June 7, 2010 (the missed call and the return call Plaintiff placed), the alleged failure of NCO to send a notification letter to Plaintiff, the "false statements" by Mr. Bhandare, and the failure after June 7 to send Plaintiff further information regarding the debt—is harassing, abusive, and unconscionable.  Defendant simply denies this characterization of its conduct.

The Court agrees with Defendant.  As discussed above, any alleged "false" statements made by NCO were not done with any attempt to mislead or deceive.  Mr. Bhandare's tone on

the phone was polite and non-confrontational.  In addition, it is clear that, regardless of whether Plaintiff actually received a notification letter, NCO attempted to mail one to him.  Finally, the conduct at issue in the case here is clearly not the same type as that specifically delineated in the code as harassing, abusive, or unconscionable.  As a result, Defendant's Motion is granted as it pertains to claims arising out of 1692d or 1692f.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion is granted.  Defendant has satisfied the burden required for the mailbox rule and is entitled to a rebuttable presumption that it sent Plaintiff the notification required by 1692g.  Because Plaintiff has not rebutted that presumption, Defendant is entitled to Summary Judgment.  To the extent that Plaintiff cannot show that any false statements by NCO were material, his claim under 1692e fails as a matter of law.  There is also no indication that NCO or any of its employees used harassing, abusive, or unconscionable behavior towards Mr. Rogozinski in connection with the collection of this debt.

An appropriate Order follows.